**AFFIRMED as MODIFIED; and Opinion Filed May 3, 2013.**



**In The**

**Court of Appeals**

**Fifth District of Texas at Dallas**

**No. 05-11-01573-CR**

**ANDREW SAENZ REYNA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 195th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F07-47936-N**

## OPINION

Before Chief Justice Wright and Justices Bridges and Campbell
Opinion by Justice Campbell[1]

A jury found Andrew Saenz Reyna guilty of possession with intent to deliver heroin in an amount of 200 grams or more but less than 400 grams. The jury also found appellant used or exhibited a deadly weapon during the commission of the offense. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 3g(a)(2) (West Supp. 2012). After finding the enhancement paragraph true, the trial court sentenced appellant to thirty years in prison. In his sole issue on appeal, appellant contends the jury's deadly weapon finding was not supported by sufficient evidence. We agree with appellant's contention. We modify the trial court's judgment to delete the deadly weapon finding and affirm as modified.

---

[1] The Honorable Charles F. Campbell, Senior Appellate Judge, Texas Court of Criminal Appeals, sitting by assignment.

## THE FACTS

In January 2007, six Dallas police officers executed an arrest warrant for Benito Solis at 730 Quinella Street. Four officers went to the front of the house and two officers went to the back. When one of the officers knocked on the front door, appellant attempted to flee through a bathroom window on the side of the house with what appeared to be two bags of controlled substances, but then crawled back into the house.

Two officers entered the house through an open front window and the others entered through the front door. The officers performed a protective sweep through the house and found several people inside. They found 203 grams of heroin in a baggie in a bathroom. They also found three handguns concealed in an air conditioner duct in a hallway, a shotgun in the dining room, and two other guns near a front window. The officers found appellant in the back part of the house and arrested him. Benito Solis was not found in the house, although mail addressed to him was found there. At trial, there was no evidence that appellant had any real property interest in the house.

The jury charge applied the law of parties to the primary charge of drug possession as well as to the special issue regarding use or exhibition of a deadly weapon. *See* TEX. PENAL CODE ANN. §§ 7.01, 7.02 (West 2011). The jury made an affirmative finding on the special issue.

## ARGUMENTS OF THE PARTIES

In his sole issue on appeal, appellant contends there was no evidence at trial showing he was aware a deadly weapon would be used during the commission of the offense. He contends that at the time of the offense, he never mentioned any weapons, he was never in proximity to the weapons that were found, and he was in the back of the house when the weapons were found in

the air conditioner duct and in the front of the house. Appellant also argues he was not an owner or lessee of the house. Finally, appellant argues that, except for the shotgun, the weapons in question were not visible to people entering the house. In support of his evidentiary sufficiency argument, appellant relies chiefly on *Torres v. State*, 233 S.W.3d 26 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

The State, in its response, relies chiefly on *Patterson v. State*, 769 S.W.2d 938 (Tex. Crim. App. 1989), and *Gale v. State*, 998 S.W.2d 221 (Tex. Crim. App. 1999). The State appears to argue that because the evidence adduced at trial was sufficient to show beyond a reasonable doubt that appellant was guilty of drug possession and that weapons were present at the scene during the commission of the offense, then appellant was *ipso facto* guilty of using or exhibiting a deadly weapon during the commission of the offense.

### APPLICABLE LAW

As an appellate court, our task is to view the evidence in the light most favorable to the verdict, and to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Gale*, 998 S.W.2d at 223; *see also Coleman v. State*, 145 S.W.3d 649, 652 (Tex. Crim. App. 2004).

The essential element at issue is whether appellant either used or exhibited a deadly weapon during the commission of the offense or was a party to the offense and knew that a deadly weapon would be used or exhibited. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 3g(a)(2).

### ANALYSIS

In *Torres*, the defendant was convicted, as a party, of possession with intent to deliver cocaine found in a co-defendant's apartment. *See Torres*, 233 S.W.3d at 27–29. Although it was

clear from the evidence at his trial that Torres never personally used or exhibited a deadly weapon during the commission of his offense, the trial court nonetheless made an affirmative finding on a deadly weapon allegation. *See id.* On appeal, Torres argued the evidence was insufficient to support the deadly weapon finding. The First Court of Appeals agreed, explaining:

> There is nothing in the record to show that [Torres] was aware that a deadly weapon would be used in the commission of the offense. [Torres] never mentioned weapons [during the commission of the offense]; he did not own the apartment in which the weapons were discovered; and [he] was never in the proximity of the weapons. He sat near the door [of the apartment], and the guns were discovered in a bag on the kitchen counter and in the cushions of a chair that was not near [him]. The ammunition was seen on the bed in the [bedroom] with the cocaine. However, [Torres] was never in that room. The guns were not visible to anyone entering the apartment, including [Torres]. Although [a police officer] testified that guns are commonly used to protect drug dealers and their merchandise, there is nothing in the record to show that [Torres] knew that guns were present in the apartment in this case.

*Id.* at 30–31. The First Court concluded that, given the record evidence, no rational trier of fact could have concluded beyond a reasonable doubt that Torres knew a deadly weapon would be used or exhibited during the commission of the offense. *Id.* at 31. Accordingly, the First Court modified the trial court's judgment to delete the deadly weapon finding. *Id.* at 32.

We conclude this case before us is similar to *Torres*. Here, appellant, at the time of the offense, never mentioned weapons. He was found in the back of the house, whereas the weapons were either hidden from view or in the front of the house. Appellant was not in proximity to any of the weapons to such a degree that one could reasonably surmise he knew of their existence. There was no evidence appellant owned, leased, or resided in the house. There was no evidence appellant initially entered the house through its front door. In short, given the record evidence, the jury could *speculate* that appellant knew a deadly weapon would be used or exhibited during the commission of the offense, but no *rational* jury could conclude *beyond a reasonable doubt*

–4–

either that appellant himself used or exhibited a deadly weapon or that he knew a deadly weapon would be used or exhibited by someone else. Indeed, no rational jury could conclude beyond a reasonable doubt that appellant even knew there were weapons in the house.

Neither *Patterson* nor *Gale* supports the State's position because those cases are distinguishable on their facts. Patterson was convicted of possession of methamphetamine and of using or exhibiting a deadly weapon during the commission of the offense. *See Patterson*, 769 S.W.2d at 939. At the time of the offense, the police kicked in the door to a house and found Patterson inside sitting at the end of a sofa. *See id.* Lying next to Patterson on an end table was a bag with methamphetamine inside, a wallet containing over nine hundred dollars, and a "gun boot." *See id.* Upon the police entering, Patterson raised his hands and told the officers he had a gun between his legs, and that there was another gun at the end of the sofa. *See id.*

On appeal, Patterson argued the evidence was insufficient to support the deadly weapon finding because he possessed the gun to protect the money, not the narcotics. *See id.* at 940. The court of criminal appeals held, however, that a rational trier of fact could have determined that Patterson had used a gun during the commission of the offense because the jury could have determined that Patterson's gun protected and facilitated the defendant's care, custody, and management of the contraband. *See id.* at 942. In short, Patterson *had a gun between his legs and told the police that he had a gun*, whereas in the instant case appellant never mentioned weapons to anyone, was not in proximity to any weapons, and there was no evidence he even knew that weapons were at the scene.[2]

---

[2] In the deadly-weapon-finding context, the word "used" means *any* employment of a deadly weapon, even simple possession, if such possession facilitated the associated felony, and the word "exhibited" means that a weapon was consciously shown, displayed, or presented to be viewed. *See Patterson*, 769 S.W.2d at 941.

In *Gale*, undercover narcotics officers arrived at Gale's residence and conducted a "knock-and-talk." *Gale*, 998 S.W.2d at 222–23. One of the officers spoke with Gale and his wife, and both Gale and his wife were cooperative and led the officer directly to their bedroom closet, wherein the officer discovered a trash bag containing over twenty pounds of marijuana, a Ruger Mini-14 rifle, an Uzi semi-automatic assault rifle, a nine-millimeter rifle, a nine-millimeter handgun, and ammunition for the firearms. *Id*. at 223. At trial, Gale pled guilty to the charge of possession but pled "not true" to the special issue concerning the use or exhibition of a deadly weapon. *Id*. The State offered evidence in the form of testimony that any of these weapons could have been fully loaded and ready to fire within seconds, and such weapons were commonly used by drug traffickers to protect their contraband. *Id*. The jury affirmatively answered the deadly weapon special issue. *Id*. On appeal, Gale argued the evidence was insufficient to support the deadly weapon finding. The court of criminal appeals disagreed, holding a rational jury could have concluded beyond a reasonable doubt that the weapons in question facilitated Gale's criminal offense. *Id*. at 225. *Gale* is distinguishable from the instant case because the weapons in *Gale* were found next to the controlled substance *in the defendant's residence*. In the instant case, in contrast, there was no evidence appellant owned, leased, or resided in the house in which he was arrested and no evidence from which a rational jury could conclude beyond a reasonable doubt that appellant was aware the weapons were present at the scene. We sustain appellant's sole issue.

## CONCLUSION

Having found the evidence legally insufficient to prove that appellant used or exhibited a deadly weapon or that he knew that a deadly weapon would be used or exhibited, we modify the

judgment of the trial court to delete the finding of use or exhibition of a deadly weapon. We affirm the judgment as modified.

  /Charles F. Campbell/         
CHARLES F. CAMPBELL
JUSTICE, ASSIGNED

Do Not Publish
TEX. R. APP. P. 47

111573F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ANDREW SAENZ REYNA, Appellant

No. 05-11-01573-CR  V.

THE STATE OF TEXAS, Appellee

On Appeal from the 195th Judicial District Court, Dallas County, Texas
Trial Court Cause No. F07-47936-N.
Opinion delivered by Justice Campbell, Chief Justice Wright and Justice Bridges participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

We modify the judgment to delete the deadly weapon finding.

As **MODIFIED**, the judgment is **AFFIRMED**.

Judgment entered this 3rd day of May, 2013.

/Charles F. Campbell/

CHARLES F. CAMPBELL
JUSTICE, ASSIGNED

–8–